Russell Montague
28766-034
Federal Correctional Institution
P. O. Box 7000
Texarkana, TX 75505-7000

pro se



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI, JACKSON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:04 CR 26 WSu |
| Plaintiff/Respondent | ) | |
| | ) | |
| v | ) | MEMORANDUM OF POINTS AND AUTHORITIES IN |
| | ) | SUPPORT OF PETITIONER'S MOTION TO VACATE, |
| RUSSELL MONTAGUE, | ) | SET ASIDE OR CORRECT A SENTENCE, PURSUANT |
| Defendant/Petitioner | ) | TO 28 USC §2255 |
| | ) | |
| | ) | |

Defendant/petitioner Russell Montague hereby submits this memorandum, addressing his waiver of appeal rights and points and authorities in support of his petition for habeas relief ("2255").

I. WAIVER: Montague was convicted via a memorandum of understanding ("Agreement"), which included a clause expressly waiving "the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including . . . section 2255 . . . " (§11(b)) Such waivers are generally enforceable, except when valid claims are raised of ineffective assistance of counsel or that a plea of guilty was not "knowing and voluntary." (<u>U.S. v Abarca</u> 985 F.2d 1012 (9th Cir. 1993), accord <u>U.S. v Wilkes</u> 20 F.3d 651, 53 (5th Cir. 1994)) Montague does not assert that his plea of guilty and his waiver of his right to collaterally attack his sentence ("waiver") were generally not "knowing and voluntary," but, rather, that he received ineffective assistance of counsel in negotiating his Agreement and

1

in representing him at sentencing proceedings and that counsel's failure to advise him of critical legal issues pertaining to his sentence rendered his plea of guilty not "knowing," thus piercing his waiver of appeal rights. (". . . . a guilty plea . . . cannot truly be voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy v U.S. 394 US 459, 66 (1969))

As a threshold matter, the court will need to address the enforceability of the waiver before progressing to the merits of his 2255. But the claims raised in his 2255 are the same claims supporting vacation of the waiver. Thus, to avoid redundancy, the court will first need to address the merits of his 2255 in order to rule on the validity of the waiver.

II. ARGUMENTS

A. INEFFECTIVE ASSISTANCE OF COUNSEL (Ground 1)

While it is well settled that a defendant may waive essential rights, such as the constitutional right to counsel, such waiver must be explicit. (Presuming record from a silent record is impermissible. Miranda v Arizona 384 US 436) Montague's Agreement did not contain a waiver of his right to counsel. The right to counsel is the right to the effective assistance of counsel, (Evitts v Lucey 83 L.Ed.2d 821 and Cuyler v Sullivan 64 L.Ed.2d 333) thus, Montague did not, as part of his Agreement, waive the effective assistance of counsel in negotiating the Agreement or in representing him at sentencing. Montague pled guilty, reasonably believing counsel would effectively represent him at sentencing.

Montague and co-defendants Clint Todd and Kimberly Windham were indicted for various firearms-related offenses, including possession of stolen firearms. A critical issue at sentencing these defendants was the volume of firearms involved. The indictment, in Counts 2, 3 and 5, specified the same 11 firearms (including

2

serial numbers) allegedly involved. (n.1)  No other firearms were identified in the indictment.

1. Tentative agreement on the terms of Montague's Agreement was reached on November 10, 2004, after the decision in <u>Blakely v Washington</u> 542 US ___.  The volume of firearms alleged would clearly fall within the dicta of the <u>Blakely</u> decision, as that was a fact which could increase the "statutory maximum" under a mandatory guideline sentencing scheme.  Soon after, but before sentencing, decision was rendered in <u>U.S. v Booker</u> 543 US ___, creating an advisory sentencing scheme and effectively neutering the <u>Blakely</u> decision as to federal sentencing.  During negotiation of the Agreement, considering the considerable uncertainty that pervaded the legal landscape regarding sentencing issues, counsel could have, but failed to seek inclusion of a clause limiting Montague's accountability for the firearms possessed to the volume (11) charged in the indictment.  Such clause would have survived the <u>Booker</u> decision's creation of the advisory sentencing scheme.

Parties are essentially unfettered as to what terms they seek to include in a plea agreement.  Counsel was certainly free to seek such a stipulation, and was ineffective in not seeking such.  Counsel did not communicate that he attempted to do so, but was frustrated by the government.  Montague was prejudiced by the error by being sentenced at two additional levels, likely increasing his sentence by 22-months (the difference between the bottom and top of both ranges, respectively).

---

1. Montague was convicted of Counts 2 (theft of firearms (18 USC §924(1))), 4 (possession of unregistered firearms (26 USC §§5841, 5861(d) and 5871)), 5 (felon in possession of firearms (18 USC §922(g)(1))) and 6 (use and carry a firearm during a drug trafficking offense (18 USC §924(c)(1))).  Todd was convicted by plea agreement of Counts 1 (conspiracy to traffic in stolen firearms (18 USC §371)) and 3 (possession of stolen firearms (18 USC §922(j))).  Montague is unaware of what Windham was convicted of.

2. Montague's counsel objected to his accountability for the 40 firearms alleged in Montague's presentencing report (PSI), which gave him an enhancement of 6 levels (§2K2.1(b)(1)(C) for 25 to 99 firearms), arguing, instead, for the 4-level enhancement found at §2K2.1(b)(1)(B) for 8 to 24 firearms, for the 11 firearms alleged in his indictment. Montague's co-defendant, Clint Todd, was represented by separate counsel, sentenced by the same judge and involved in the same course of conduct as Montague: Montague and Todd were equal partners in the trafficking of stolen firearms and Todd had, at one point or another, possessed each of the firearms alleged in the indictment for which they were both held to account.

Montague had not possessed or trafficked in any weapons that Todd had also not possessed or trafficked or was otherwise culpable under §1B1.3(a)(1)(B) (co-conspirators culpable for "all reasonably foreseeable acts or omissions of others in furtherance of the jointly undertaken criminal act.") It strains principles of equity to hold Montague accountable for 40 firearms, while Todd was held accountable for only 11. This created an unwarranted disparity in sentences based not on any "rational basis" for the disparity, differing facts at sentencing or differing interpretations of the facts or the law by differing judges, but solely due to the lesser effectiveness of Montague's counsel (as compared to Todd's counsel) in arguing the volume of firearms involved. (n.2)

Todd's PSI recommended the same 6-level enhancement for the volume of firearms alleged. Todd's counsel argued that his sentence should not be enhanced for firearms not included in his indictment. (copy of Todd's brief attached

---

2. While "equal protection" does not require that all persons be dealt with identically, it does require that "there be some 'rational basis' for the statutory distinctions made . . . " Marshall v U.S. 414 US 417, 22 (1974) Montague does not argue that the sentences crafted must be identical in order to avoid unwarranted sentencing disparity, as Montague had a greater criminal history, justifying a longer sentence. However, the Sentencing Guidelines were wisely crafted to comprise a matrix, with one axis being criminal history and the other axis being offense conduct. Thus, two defendants with roughly similar offense conduct (as Montague and Todd in the instant case) would be at the same offense level axis, leaving only a variation for criminal history to factor in.

as Exhibit A) Montague's counsel was believed to have been present in court when Todd's counsel argued effectively for limiting the enhancement to only 11 firearms and, thus, should have been able to emulate Todd's counsel's success in this regard.

Montague's counsel could have and should have argued for a two-level downward departure for "unwarranted sentencing disparity with co-defendants." There is no justification for Montague's offense level to be two-levels greater than Todd's for the volume possessed and creates an unwarranted sentencing disparity, elimination of such was a primary goal of the Sentencing Guidelines. (n.3)

While one can argue that the Court was free, under the advisory sentencing scheme now in effect, to impose the sentence it did on Montague, any sentence imposed under an incorrect application of the Guidelines or based on disparate application of similar facts would (arguably) be inherently "unreasonable." Even under the "advisory" Guidelines, the Guidelines are still vital, with still-frequent amendments and litigation regarding their proper application. Any sentence imposed with the ineffective assistance of counsel would be inherently "unreasonable," as defendants retain their Sixth Amendment rights to the effective assistance of counsel at all stages of proceedings, including sentencing. Montague argues that counsel was ineffective at sentencing, thus his sentence was "unreasonable."

3. Montague's counsel was ineffective in failing to alert the Court to the disparity in the number of firearms to which Montague and Todd were held accountable. Had the Court been alerted to such, it may likely have reached a different decision regarding Montague's sentence.

---

3. Todd and Windham had both handled all of the firearms alleged in this conspiracy, and thus were as equally culpable as was Montague.

B.  MONTAGUE'S PLEA OF GUILTY WAS NOT "KNOWING." (Ground 2)

Montague's counsel told him that as there were only 11 firearms listed in the indictment, his responsibility was limited to those 11 firearms. While counsel cannot be expected to predict changes in law (Sherill v Hargett 184 F.3d 1172, 76 (10th Cir. 1999), neither can Montague, unschooled in the law, be expected to predict changes in the law.

In a letter to Montague dated November 17, 2004, (which post-dated the tentative agreement of November 10, 2004) counsel detailed to Montague various sentencing scenarios. These scenarios showed a four-level enhancement for possessing 8 to 24 firearms (§2K2.1(b)(1)(B)) and made no mention of the possibility of a higher level for additional firearms and raised the possibility of an enhancement for "leader/organizer" (§4B1.1). (copy of letter attached)

A plea of guilty made without knowledge that he could be held responsible for allegations well-known to counsel and the government for some time, cannot be considered "knowing."


III. REMEDIES SOUGHT:

1. Vacate Montague's sentence and resentence him to within the range for offense level 23, criminal history VI (92 - 115 months), consecutive to his 60-month sentence for violation of 18 USC §924(c)(1)(A)(i) (use or carry a firearm during a drug trafficking offense).

2. Other remedies as may be appropriate.


Dated:

12/16/05

Respectfully submitted,

*Russell Montague* (signature)

Russell Montague

6

*My Rule's Motion*

**COPY**

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

John M. Colette
P.O. Box 861
Jackson, MS 39205

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | DOCKET NO.: 3:04cr26WSu |
| | ) | |
| CLINT TODD | ) | |

## OBJECTIONS TO PRESENTENCE REPORT

**COMES NOW**, CLINT TODD, defendant in the above styled and numbered cause and files this his Objections to Presentence Report and in support thereof would show and represent unto this Honorable Court the following:

Defendant objects to Paragraph 24 (Specific Offense Characteristic).

The chapter provides a six (6) level increase due to the fact that more than 25 firearms but less that 99 were involved in the instant offense. Pursuant to the Memorandum of Understanding filed with this Court Clint Todd pled guilty to Counts 1 and 3 of the indictment. The relevant parts of said Counts specifically name the following weapons as the basis of the criminal allegations:

> One (1) Phoenix Firearms Inc., (d/b/a MK arms) 9mm machine gun...
> Two (2) Colt .223 caliber rifles...
> One (1) Glock .45 caliber pistol...
> One (1) Daewoo .223 caliber rifle...
> One (1) Enterprise 7.62 caliber rifle...
> Two (2) Norinco .223 caliber rifles...
> One (1) Fabrique National rifle...
> Two (2) Colt .45 caliber pistols...

Therefore the United States attorney listed a total of eleven (11) weapons in support of his indictment. No other weapons were listed within the counts pled to by

Clint Todd. Section 2K2.1(b)(1)(C) provides for an increase of only four (4) levels if the number of weapons is more than eight (8) but less than twenty-four (24). Since these were the only weapons listed in the indictment these should be the only weapons used for sentencing calculations.

Defendant objects to Paragraph 25 (Specific Offense Characteristic).

Defendant, Clint Todd, was indicted under Section 922(j), Title 18, United States Code.

Specifically Section 922(j), Title 18, United States Code provides:

> (j) It shall be unlawful for any person to receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

Application Note 9 to the United States Sentencing Commission Guidelines provides:

> If the only offense to which §2K2.1 applies is 18 U.S.C. § 922(i), (j), or (u), or 18 U.S.C. § 924(l) or (m) (offenses involving a stolen firearm or stolen ammunition) and the base offense level is determined under subsection (a)(7), do not apply the adjustment in subsection (b)(4) unless the offense involved a firearm with an altered or obliterated serial number. This is because the base offense level takes into account that the firearm or ammunition was stolen.

Since Clint Todd was indicted under 18 U.S.C. Section 922(j) he could have fallen under Application Note 9.

Subsection (a)(7) is the minimal base level for Section 2K2.1 (except for certain other weapons violations contained in 2K2.1(8)). Defendant is aware that Application Note 9 indicates that it applies only where subsection (a)(7) is applied but logically it would follow that if the Commission had taken into consideration that "the base offense level takes into account that the firearm... was stolen" then it should be taken into

account for all levels of 2K2.1. Otherwise, those individuals who, for one reason or another, would fall above 2K2.1(a)(7) would receive increased incarceration simply because they had some factor which would cause an increase in their level (such as being a prohibited person as Clint Todd is accused). In other words, Clint Todd would receive an additional two (2) levels for possessing a stolen weapon as well as a significant increase in levels for being a prohibited person where, but for being a prohibited person, he would not have received the two (2) level increase for stolen weapons. He receives a two (2) level increase because the stolen weapons he has been convicted of possessing under 18 U.S.C. Section 922(j) were stolen when others similarly situated would not.

                                      Respectfully Submitted,

                                      CLINT TODD,
                                      Defendant

                                      BY: _____
                                          RICHARD E. SMITH, JR.
                                          His Attorney

OF COUNSEL:

RICHARD E. SMITH, JR.
MSB#9661
1117 Openwood Street
Vicksburg, Mississippi 39183
Telephone: (601) 631-0299
Facsimile: (601) 631-6955

LAW OFFICE OF
# John Mark Colette

401 EAST CAPITOL STREET, SUITE 308
HERITAGE BUILDING
JACKSON, MISSISSIPPI 39201
TELEPHONE (601) 355-6277
TOLL-FREE 888-659-6277
FAX (601) 355-6283

JOHN MARK COLETTE

November 17, 2004

POST OFFICE BOX 861
JACKSON, MISSISSIPPI 39205

*713-224-1747*

**LEGAL MAIL**
Mr. Russell Montague
c/o Madison County Jail
2935 Hwy 51 North
Canton, Mississippi 39046

RE: *USA vs. R. Montague*

Dear Russell:

Well, we finally have some "good" news on your situation that may help with your decision and overall resolution of your case.

First, I have been advised that Kim Windham and Clint Todd have already "pled" guilty and agreed to testify against you. (Their sentencing is set for January) Angela has indicated she will also enter a guilty plea and testify against you.

Secondly, the case in Forrest County apparently was an "aggravated assault", but, got reduced to a misdemeanor.....which is probably why you don't recall it or remember signing a Petition....so that helps and shows you were correct.

Thirdly, Mr. Dukes tells me there are three (3) pending charges in Forrest County, but, if you plead here, they will be "remanded" to the file.

Fourth, I met with AUSA Anderson and she is _not_ willing to offer any reduced exposure for a large fine.

Fifth, I have reviewed the "guidelines" and here is what the Probation Officer may propose, contingent upon your statement to me that you do _not_ have two (2) or more felony convictions for a crime of violence or drug offenses, to-wit:

1. <u>Base Offense Level</u> - Based on the above....Level 20    2K2.1(A)(3)
2. Plus................+ 4                                        2K2.1(B)(1)(B) (8-24 F/A)
3. Plus................+ 2                                        2K2.1(B)(4) (stolen F/A)

*this means no aiding and abetting same

Then, provided Section 2K2.1 (B)(5) doesn't apply (plus 4 levels) your adjusted offense level, should be 26.

Now there are additional factors; first, Counts 2, 4, and 5 should be grouped, so you would take the level 26, less 3 for acceptance, if you qualify, giving you a level 23, then guessing at your criminal history score.....which I assume will be a Category III (4 to 6 points) it would give you a range of (57 to 71 months). Which would be great, but, due to Count 6, which is a mandatory sixty (60) months, consecutive - your range would be (117 (9.75 years) to 131 (10.9 years) months), both of which are considerably lower than the (204 months or 17 year) term the government would like to see imposed!

Again, this is a "rough" estimate and they may try to increase your sentence by four (4) levels for the 2K2.1 (B)(5) enhancement, a leadership role enhancement (plus 3 levels) or the criminal offender provisions in Section 4B1.1, U.S.S.G., although I don't feel any will be applicable.

So, in essence, they'll compute the guideline ranges for Counts 2, 4, and 5 then add sixty (60) months to that range for Count 6.

Overall, I'm very pleased with the potential outcome and hope you are satisfied with the results, but, again, this is all subject to your prior convictions not being violence or drugs.

Lastly, we need to know your decision as soon as possible and remember, this is an educated guess as to the P.S.R., but, you will still have your arguments against applying these enhancements, should the U.S.P.O. propose same.

Let me know what you want to do.

Sincerely,

John M. Colette

P.S. If you elect not to accept the plea, please make arrangements to have additional funds paid to us for trial.